CHRISTOPHER W. DECKER, CA Bar No. 229426
christopher.decker@ogletree.com
MAZEN I. KHATIB, CA Bar No. 306263
mazen.khatib@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Santa Clara, CA  90071
Telephone:  213.239.9800
Facsimile:  213.239.9045

Attorneys for Defendant
TRACTOR SUPPLY COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA SWEENEY, as an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>TRACTOR SUPPLY COMPANY, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 5:18-cv-4848<br><br>**NOTICE OF REMOVAL**<br><br>[Concurrently filed with Civil Cover Sheet, Notice of Related Cases, Certification of Interested Parties and Disclosure Statement; and Declarations of John Kongsaysy, Christopher W. Decker and Karen S. Austin in Support of Removal]<br><br>Complaint Filed:   July 3, 2018<br>Trial Date:      None |

35139913_4.docx

**TO THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DEBRA**
**SWEENEY AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant Tractor Supply Company ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a), and 1446. In support of such removal, Defendant states as follows:

## I.    BACKGROUND

1.      On July 3, 2018, Plaintiff Debra Sweeney ("Plaintiff") commenced this action by filing an unverified class action complaint for damages in the Superior Court of the State of California, County of Santa Clara, entitled *Debra Sweeney, as an individual and on behalf of all others similarly situated, v. Tractor Supply Company, a Delaware corporation and DOES 1 to 50*, Case No. 18CV330995 (hereinafter referred to as the "Complaint"). (A true and correct copy of this Complaint is attached as "Exhibit A" to this Notice of Removal ("Notice").)

2.      Defendant was served with the Summons and Complaint on July 11, 2018. (Proof of Service, a true and correct copy of which is attached hereto as "Exhibit B".).

3.      Plaintiff's Complaint asserts the following three claims for relief against Defendant: (1) Violation of Cal. Labor Code Sections 510, 558 and 1194; (2) Violation of Cal. Labor Code Section 226(a); and (3) Violation of Cal. Bus. & Prof. Code Section 17200 et seq.

4.      As set out more fully below, based on the allegations of the Complaint and other evidence collected by Defendant, this Court has original jurisdiction over

this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d) and hence the action may be removed by Defendant pursuant to 28 U.S.C. § 1441. Original jurisdiction exists here because there are at least 100 class members in all proposed plaintiff classes, the combined claims of all class members exceed $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a different state than at least one class member.

## II.   DEFENDANT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

### A.   Timeliness

5.   The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co*., 425 F.3d 689, 694 (9th Cir. 2005). Here, the four corners of the Complaint does not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. The Complaint does not allege the size of any putative class nor does it allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, Defendant has not received any other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. (Declaration of Christopher W. Decker ¶ 5.) Accordingly, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, Defendant has only recently discovered such evidence after an arduous collection and

complex analysis of the estimated damages allocated to each cause of action. Therefore, Defendant is timely removing this case based on that discovery.

**B.    Venue**

6.    The Superior Court of California for the County of Santa Clara is located within the Northern District of California. Therefore, the action is properly removed to this Court pursuant to 28 U.S.C. 84(d) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

**C.    Procedural Requirements**

7.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice of Removal.

8.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court of California in the County for Santa Clara and with the Clerk of the Northern District of California. True and correct copies of the Notice to the Plaintiff and the state court shall be filed promptly.

**III.    THE CASE IS REMOVABLE PURSUANT TO THE CLASS ACTION FAIRNESS ACT ("CAFA")**

9.    As set forth below, Plaintiff's claims as alleged in the Complaint are removable under 28 U.S.C. § 1332(d).

10.    Under CAFA, the Federal District Court has jurisdiction if:

    a)    There are at least 100 class members in all proposed plaintiff classes; and

    b)    The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    c)    Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

5139913_4.docx

## A.    <u>There are at least 100 Class Members in all Proposed Plaintiff Classes</u>

11.    In this action, Plaintiff seeks to represent a class of all current and former persons employed by Defendant in non-exempt positions in California "who earned overtime wages and non-discretionary remuneration (such as Store Bonuses) in the same pay period, at any time beginning on July 3, 2014 through the present" (Complaint ¶ 17), which Plaintiff refers to as the "CLASS." Using the present date as the period end date, the CLASS exceeds 100 members (Declaration of John Kongsaysy ["Kongsaysy Decl."] ¶ 3), and therefore the requirement of 29 U.S.C. § 1332(d)(5)(B) is satisfied.

12.    Plaintiff's Complaint omits any reference to the number of individuals in the putative class but also asserts that the number class members exceeds the minimum requirements for numerosity under California law. (Complaint ¶ 18.) Based on a review and analysis of Defendant's timekeeping and payroll records, the company has employed 2,951 individuals in non-exempt positions in California from July 3, 2014 to present.[1]  (Kongsaysy Decl. ¶ 3). TSC's records indicate 1,913 of these employees received overtime earnings in the same fiscal month that they earned a share of Tractor Supply Company's Store Bonus (which Defendant commonly refers to as the "Monthly Store Bonus"). (Kongsaysy Decl. ¶ 4). Thus, the first requirement for CAFA jurisdiction is satisfied.

13.    Based on the above, there are more than 100 class members in all proposed plaintiff classes.

## B.    <u>The Combined Claims of all Class Members Exceed $5 Million Exclusive of Interest and Costs</u>

14.    Based on Plaintiff's allegations in the Complaint and other evidence

---

[1] Specifically, the date July 20, 2018 is used as the "present date."

5:18-cv-4848

5139913_4.docx

collected by Defendant, the aggregate value of the claims of all proposed plaintiff classes exceeds the $5 million threshold needed to establish federal jurisdiction under the Class Action Fairness Act. The $5 million jurisdictional minimum may be based on aggregation of the claims of all potential class members. 28 U.S.C. § 1132(d)(6). As is shown below, the evidence shows that Plaintiff's Complaint places more than $5 million in controversy.

### 1.    Plaintiff's First Cause of Action Places at least $351,099 in Controversy

15.    Plaintiff's First Cause of Action seeks wages for Defendant's alleged failure to pay overtime at the "correct, higher regular rate of pay taking into account all non-discretionary remuneration, including Store Bonuses." (Complaint ¶¶ 18, 31-36.)

16.    Plaintiff alleges that, "Defendants as a matter of policy and practice, failed to pay Plaintiff and the Class overtime pay at the correct, higher regular rate of pay in violation of Labor Code sections 510, 558 and 1194." (Complaint ¶ 33.) Under Labor Code section 510(a), an employee is entitled to compensation at 1.5 times the employee's regular rate of pay for "work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek."

17.    Plaintiff alleges that, "Defendants routinely dispensed non-discretionary remuneration, including Store Bonuses, to their employees, including pay periods where Plaintiff and the Class worked overtime. This non-discretionary remuneration, however, was not included when calculating the regular rate of pay for overtime wages." (Complaint ¶ 33.) Plaintiff alleges this "policy and practice" resulted in Defendant "regularly" failing to pay Plaintiff and the Class their proper overtime pay. *Id*.

18.    The statute of limitations for a claim seeking wages for failure to pay

overtime at the correct rate is three years. Cal. Lab. Code § 203; Cal. Civ. Proc. § 338.  This statute of limitations is extended to four years where, as here, the complaint includes a claim for Unfair Business Practices under Bus. & Prof. Code § 17200. Accordingly, if the allegations of the Complaint are true, Defendant owes additional remuneration to each individual employed in a non-exempt position in California who received a Monthly Store Bonus that corresponded to a fiscal month in which that employee received compensation for overtime hours.[2] Defendant would owe additional remuneration for each such hour from July 3, 2014 to the present.

19.    The Complaint does not allege the number of overtime hours for which additional overtime compensation is due, the amount of the underpayment, or how that amount could be determined, except to say that the Monthly Store Bonus payment to each employee should have been included in that employee's regular rate of pay when computing the applicable overtime rate for fiscal months in which an employee earned a Monthly Store Bonus.  Based on a review of Defendant's records, the Putative Class Members received 151,991.1 hours of overtime earnings in fiscal months for which they also earned a Monthly Store Bonus. (Kongsaysy Decl. ¶ 4).  If Plaintiff's allegations in the Complaint are true, then TSC owes additional overtime compensation for each of these hours, as the Monthly Store Bonus was not included in the regular rate of pay when computing the applicable overtime premium rate.

20.    Based on a review of Defendant's records, those Putative Class Members who received overtime earnings in fiscal months for which they also earned a Monthly Store Bonus collectively received $3,799,548.51 in Monthly

---

[2] Defendant disputes that the Monthly Store Bonus must be included in the employee's regular rate of pay when calculating the overtime premium due for any overtime hours during the bonus period.

Store Bonus payments for those months, and collectively received 2,460.780.72 hours in straight-time earnings in those months.  (Kongsaysy Decl. ¶¶ 7, 8). Dividing the total bonus paid by the total non-overtime hours worked ($3,799,548.51 divided by 2,460.780.72 hours), the bonus payments that should have been included in the regular rate of pay for these hours, if Plaintiff's factual allegations and legal theories are true, would be, on average, $1.54 per hour.  This addition to the regular rate of pay would increase the applicable overtime rate by 1.5 times this amount, or $2.31, assuming the bonus is subject to the formula most favorable to the employee.  *See Alvarado v. Dart Container Corporation*, 4 Cal. 5th 542, 572 (2018), (formula for calculating overtime wages due on bonus under California law is to divide the bonus by non-overtime hours, multiply the result by 1.5, and pay the resulting overtime wage for each overtime hour worked).[3]

21.     Based on a review of Defendant's records, those Putative Class Members who received overtime earnings in fiscal months for which they also earned a share of the Monthly Store Bonus collectively received 151,991.1 in overtime hours in those months.  Multiplying these hours by the increase in the applicable overtime rate for these hours, (151,991.1 hours * $2.31 per hour), Putative Class Members would be entitled to recover at least $351,099.44 in unpaid overtime wages, if Plaintiff's factual allegations and legal theories in her First Cause of Action are true.

> **2.     Plaintiff's Second Cause of Action Places at least $403,900 in Controversy.**

22.     Plaintiff's Second Cause of Action seeks penalties under California Labor Code section 226(e) for failure to provide accurate itemized wage

---

[3] Defendant does not concede that the formula set forth in *Alavardo v.  Dart Container Corporation* would apply here, even if the Monthly Store Bonus is includible in the regular rate of pay, and expressly reserves the right to argue for a formula more favorable to the employer.

5139913_4.docx

statements. (Complaint ¶¶ 36-39.) The applicable penalty is fifty dollars for the initial pay period in which a violation occurs, and one hundred dollars for each violation in a subsequent pay period, up to a maximum aggregate penalty of four thousand dollars. Cal. Lab. Code § 226(e). Plaintiff alleges that Defendant violated Cal. Lab. Code § 226(a) by not accurately "recording the correct applicable overtime hourly pay rate and the resulting adjusted gross and net wages earned." (Complaint ¶ 38.)

23.    Based on these allegations, Plaintiff further alleges that he and the members, are entitled to "all the damages or penalties pursuant to Labor Code section 226." (Complaint ¶ 39.) The Labor Code provides for $50.00 for the initial pay period in which a violation of Labor Code § 226(a) occurred, and $100.00 for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of $4,000.00 per class member. Labor Code § 226(e).

24.    The applicable statute of limitations to recover penalties under California Labor Code section 226(e) is one year. Cal. Civ. Pr. Code § 340(a). Accordingly, if the allegations of the Complaint and Plaintiffs legal theories are correct, any individual employed by Defendant in a non-exempt position in California who earned a share of the Monthly Store Bonus on or after July 3, 2017 and received overtime earnings in that same fiscal month for which the bonus was paid would be entitled to a penalty under California Labor Code section 226(e) for each such bonus payment, at a minimum, as the wage statement displaying the bonus payment would not include the allegedly due additional overtime compensation triggered by the bonus payment.[4]

---

[4] The bonus period typically encompassed two, and sometimes three, distinct pay periods. If the employee received compensation for overtime hours in more than one pay period during the bonus period, he or she could potentially be entitled to a penalty under section 226(e) for each such pay period, resulting in a greater amount-in-controversy than calculated here.

5139913_4.docx

25.    Based on the TSC's records, there are 1,084 putative class members who earned a Monthly Store Bonus on or after July 3, 2017 and received overtime earnings in the same fiscal month for which they received a Monthly Store Bonus. (Kongsaysy Decl. ¶ 6.) Based on these records, these putative class members, collectively, received 4,581 bonus payments for fiscal months in which they also received overtime earnings.   (Kongsaysy Decl. ¶ 6.)  Each of these bonus payments would correspond to at least one wage statement which, if Plaintiff's allegations and legal theories are correct, would trigger a penalty under section 226(e).

26.    Each of the 1,084 putative class members would be entitled to a $50 penalty for the first allegedly defective wage statement received.  The remaining wage statements (4,581-1,084) would trigger a $100 penalty.  Accordingly, this cause of action places at least $403,900 in controversy.  [(1,084 *50) + ((4,581-1,084) * $100) =  $403,900].

27.    Thus, Plaintiff's Second Cause of Action therefore places at least $403,900 in controversy.

### 3.    Plaintiff Also Seeks Recovery for Purported Failure to Pay All Wages to Separated Employees, Placing an Additional $3,407,140 in Controversy.

28.    Plaintiff seeks penalties under California Labor Code section 203 for failure to timely pay wages due at termination. (Complaint ¶¶ 1, 6, 9, 11, 18, 20, 22-24, 35.) Section 203 provides that, if an employer willfully fails to pay all wages due at termination, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days continuation wages.

29.    Accordingly, if the allegations of the Complaint and Plaintiff's legal theories are correct, any Putative Class Member whose employment terminated

more than 30 days ago is entitled to 30 days' continuation wages as a penalty under Labor Code section 203.

30.    The applicable statute of limitations for a claim under Labor Code section 203 is three years. Cal. Lab. Code §§ 203 and 338. If the allegations of the Complaint and Plaintiff's legal theories are correct, Defendant owes the maximum 30 days of continuation wages to each and every individual employed in a non-exempt position in California who terminated employment between July 3, 2015 and the present and, during his or her employment, received overtime earnings in the same fiscal month for which he or she also earned a Monthly Store Bonus.  A review of Defendant's employment records reveals that there are at least 1,197 such individuals. (Kongsaysy Decl. ¶ 5.)  The average hourly rate of these employees at the time of their termination was $11.86. (*Id*.)

31.    If the allegations of the Complaint and Plaintiff's legal theories are correct, these putative class members are entitled to recover at least $3,407,140 in waiting time penalties, computed as follows:  $11.86 (average base hourly rate) x 8 (work hours per day) x 30 (maximum days of penalty pay) x 1,197 (number of Putative Class Members terminated during three-year period) = $3,407,140.

32.    Thus, Plaintiff's claim for waiting time penalties places at least $3,407,140 in controversy.

33.    Accordingly, the combined members of all class members exceed the $5 million amount necessary to establish jurisdiction under CAFA.

### 4.    Plaintiff's Prayer for Attorneys' Fees Places an Additional $1,040,534 in Controversy.

34.    Plaintiff seeks attorneys' fees on behalf of the putative class. (Complaint, Prayer for Relief).  Attorneys' fees are properly included in the amount in controversy.  *See, Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in

the amount in controversy for CAFA jurisdiction purposes); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees may properly be included in calculation of the amount of controversy where an underlying statute authorizes an award of attorneys' fees).

35.    In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%).  Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *6-7 (N.D. Cal. Mar. 1, 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'") (citation omitted).

36.    Additionally, the Ninth Circuit has recently confirmed that future attorneys' fees must be included in an amount in controversy calculation under CAFA. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2018 U.S. App. LEXIS 22036, *17 (9th Cir. 2018).  Accordingly, assuming the low-end 25% figure reflected in

5139913_4.docx

the case law, a reasonable and conservative assumption for purposes of establishing the amount-in-controversy, attorneys' fees in this matter would amount to at least 25% of the unpaid wages and penalties sought, which, as detailed above, amount to $4,162,139 [$351,099 + $403,900 + $3,407,140 = $4,162,139]. Plaintiff's prayer for attorney's fees therefore adds at least $1,040,534 (25% of $4,162,139) to the amount-in-controversy.

### C.    <u>Summary of Amount in Controversy</u>

37.    Accordingly, as set forth above, the Complaint places in actual controversy more than the required $5 million for purposes of removal under CAFA.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime | $351,099 |
| Wage Statement Penalties | $403,900 |
| Waiting Time Penalties | $3,407,140 |
| Attorneys' Fees | $1,040,534 |
| **Total** | **$5,202673** |

Accordingly, removal of this action under CAFA is proper under Section 1332(d).

### D.    <u>Any Class Member Is A Citizen Of A Different State Than Any Defendant</u>

38.    For purposes of establishing diversity under CAFA, this Court need only find that there is diversity between one putative class member and the named Defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

1.    <u>Plaintiff is a citizen of California.</u>

39.    Plaintiff was a citizen of California at all relevant times in the

5139913_4.docx

Complaint and Plaintiff remains a citizen of California. (Complaint ¶ 7.) Defendant' business records confirm that Plaintiff resided, and was employed, in Santa Clara County, California throughout her employment with Defendant. (Declaration of Karen S. Austin "Austin Decl." ¶ 6.)

2. Defendant is a citizen of Tennessee.

40.     Defendant was at the time of the filing of this action, and still is, a corporation formed under the laws of Delaware. (Austin Decl. ¶ 3.)

41.     Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *Hertz Corporation v. Friend*, 130 S.Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination." *Id*.

42.     Defendant' principal place of business and the location that its directors direct, control, and coordinate its corporate activities is Tennessee. (Austin Decl. ¶¶ 3-4.)

43.     Therefore, at all material times, Defendant has been a citizen of the State of Tennessee, and not of the State of California.

37.     There are no other named Defendants in this action. Accordingly, there is no requirement for anyone else to join in this removal. The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal based on diversity jurisdiction. 28 U.S.C. §1441(a).

38.    Since Plaintiff and Defendant are citizens of different states, the third requirement of CAFA jurisdiction is satisfied. Moreover, because Defendant is not a citizen of California, the exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) and (d)(4) are inapplicable.

## IV.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUPPLEMENTAL MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1367

39.    As set forth above, this action is removable under 28 U.S.C. § 1332(d).

40.    To the extent this Court would not otherwise have jurisdiction over any claim asserted in the Complaint, it may exercise supplemental jurisdiction over such a claim pursuant to 28 U.S.C. § 1367.

## V.    CONCLUSION

41.    This Court, therefore, has original jurisdiction over Plaintiff's claims by virtue of the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). This action is thus properly removable to federal court pursuant to 28 U.S.C. § 1441.

42.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have the opportunity to more fully brief the basis for this removal.

WHEREFORE, Defendant removes this action to this Court.

5139913_4.docx

DATED:  August 10, 2018

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By:  /s/ Christopher W. Decker
     Christopher W. Decker
     Mazen I. Khatib

Attorneys for Defendant
TRACTOR SUPPLY COMPANY

35139913.4