UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBRA SWEENEY,<br><br>             Plaintiff,<br><br>       v.<br><br>TRACTOR SUPPLY COMPANY,<br><br>             Defendant. | Case No.  5:18-cv-04848-EJD<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO (I) COMPEL ARBITRATION AND (II) DISMISS ACTION, OR ALTERNATIVELY DISMISS PLAINTIFF'S CLASS ACTION CLAIMS AND STAY CASE**<br><br>Re: Dkt. No. 13 |

Presently before the Court is a Motion to Compel Arbitration and to Dismiss filed by Defendant Tractor Supply Company ("TSC").  Plaintiff Debra Sweeney filed a class action complaint against TSC, her former employer, in Santa Clara Superior Court, and TSC subsequently removed the litigation to federal court.  Sweeney seeks to represent a class of similarly situated individuals harmed by TSC's alleged failure include their nondiscretionary bonuses in its calculation of their overtime pay.  Under Civil Local Rule 7-1(b), the Court finds this motion suitable for consideration without oral argument.  Having considered the Parties' papers, the Court grants the motion to compel, and grants in part and denies in part the motion to dismiss.  The action is stayed pending the arbitration.

## I.    BACKGROUND

Sweeney worked as an hourly, non-exempt employee at a TSC store in Santa Clara County from around early April 2017 until late June 2018.  Compl. ¶¶ 7-8.  TSC is a retailer of farm and ranch equipment, livestock and pet products, home improvement tools, and sporting goods.  Compl. ¶ 10.  She, like other non-exempt employees, routinely received nondiscretionary

remuneration, including Store Bonuses, in addition to her hourly wage. Compl. ¶ 24. She alleges that her overtime rate of pay did not include her Store Bonuses with her hourly wage in its calculations, and that her wage statements inaccurately identified her overtime pay rate, and gross and net wages. *Id.* The omission of the Store Bonuses, she alleges, deprived her of the actual rate of overtime pay due to her. *Id.* She further alleges that when her employment ended, TSC failed to pay her overtime wage that it owed her. *Id.*

When Sweeney began working at TSC, she completed its onboarding process, which included filling out and executing a number of forms through a computerized, interactive system. *See* Dkt. 15 ("Williamson Decl.") ¶¶ 4, 7. Sweeney, like other new hires, was able to pause the onboarding process by logging out and then logging back in to resume the process at a later time. *Id.* ¶ 10. This process included reviewing and agreeing to TSC's California Arbitration Agreement. *Id.* ¶ 4; Williamson Decl. Ex. D (the "Agreement"). The interactive system presented the Agreement to Sweeney in a text box with a bar to scroll through its 17 paragraphs. Williamson Decl. ¶ 8. At the bottom of the text box, she was presented with the following: "By clicking 'I Agree' below and entering the last 4 digits of my Social Security Number, and clicking 'Submit,' I am electronically signing and agreeing to the Arbitration Agreement, and agree that my electronic signature is as valid as my hand-written signature." *Id.* The Agreement was "a mandatory term of continued employment," *i.e.*, she had to accept the Agreement to work for TSC. Agreement ¶ 16. The onboarding system did not allow prospective employees, like Sweeney, to comment on or negotiate the terms of the Agreement. Williamson Decl. Ex. C. On March 11, 2017, Sweeney assented to the Agreement by clicking "I Agree," and entering her name, the last four digits of her Social Security Number and the date. Williamson Decl. ¶ 9. Sweeney does not dispute that she executed the Agreement.

The Agreement provides that "any and all claims or disputes" between TSC and its employees are subject to arbitration. Agreement ¶ 1. It specifically covers "claims for wages, overtime, bonuses, or other compensation due." *Id.* Arbitration under the Agreement will be administered by an agency agreed upon by the parties, or, if they cannot agree, then by National

Arbitration and Mediation ("NAM"), and it will be governed by NAM's Employment Rules and Procedures. *Id.* ¶ 3. The agreement later states that "[a]propriate limitations on discovery and any rights to additional discovery shall be governed by the Rules of JAMS or the rules of the administering agency selected by the parties." *Id.* ¶ 8. It specifically provides that parties may subpoena witnesses and documents. *Id.* ¶ 10.

The Agreement states in bold text, "The parties hereto acknowledge that, by entering into this Agreement, they are waiving their rights to a judicial forum for the determination of any covered Claims or disputes." Agreement. ¶ 17. Under the Agreement, "[t]he Arbitrator shall be an attorney or former judge with substantial experience in deciding employment disputes." *Id.* ¶ 4. The arbitrator has "the sole and exclusive authority to resolve all Claims between Employer and Employee." *Id.* ¶ 5. Substantively, arbitrations will be governed by the state and/or federal law that would apply to a judicial action in same state where the arbitration takes place. *Id.* The arbitrator is able to award any type of legal or equitable relief that would be available in court, including punitive damages if/when appropriate. *Id.* The arbitrator is required to provide a "reasoned, written decision and award" that includes the findings and conclusions providing the bases for the award. *Id.* ¶ 14. The decision and award are subject to "confirmation, correction, or vacation" as per the Federal Arbitration Act ("FAA"). *Id.*

TSC agrees to pay the costs of the arbitration. *Id.* ¶ 15. TSC may "modif[y] or terminate[]" the Agreement "upon thirty (30) days written notice to Employee." *Id.* ¶ 16. "Any modifications or termination shall be prospective only and shall not apply to any claims that have accrued, are pending in arbitration, or of which the Employer has been given notice by Employee prior to the effective date of the modification or termination." *Id.*

**II.     Motion to Compel Arbitration**

Sweeney does not contest that she signed the Agreement or that her claims lay within the scope of the Agreement. Rather, she challenges the Agreement itself, contending that (1) it is not valid because TSC did not sign it, (2) that it is procedurally unconscionable, and (3) that it is substantively unconscionable because it is ambiguous as to the rules that govern discovery, it does

not provide for sufficient discovery and it is not bilateral.

### a. Legal Standard

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA "sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is 'valid, irrevocable, and enforceable.'" *Heredia v. Sunrise Senior Living LLC*, 2018 WL 5734617, at *2 (N.D. Cal. Oct. 31, 2018) (quoting 9 U.S.C. § 2). "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

When assessing whether an arbitration agreement is valid, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied . . . without contravening § 2." *Heredia v. Sunrise Senior Living LLC*, 2018 WL 5734617, at *2 (N.D. Cal. Oct. 31, 2018) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Thus, the "state-law principles that govern the formation of contracts" apply to this analysis. *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 994 (9th Cir. 2010) (citations omitted). "In a motion to compel arbitration, the party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense, such as unconscionability." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 172-73 (2015). Further, the FAA allows a court to

1    strike or limit an arbitration agreement where "such grounds exist at law or in equity for the

2    revocation of any contract." *Tompkins v. 23andMe, Inc*., 840 F.3d 1016, 1022 (9th Cir. 2016)

3    (citing 9 USC § 2).

4        **b.  TSC Did Not Sign the Agreement**

5        The Court finds that Sweeney's first argument, that the Agreement is not enforceable

6    because TSC did not sign it, lacks merit.  *Chico v. Hilton Worldwide, Inc*., 2014 WL 5088240, at

7    *7 (C.D. Cal. Oct. 7, 2014).  She contends that the Agreement only provided space for her to sign,

8    and that TSC has not indicated its intent to be bound.  Thus, her argument goes, if she sought to

9    sue TSC, TSC could argue that it is not bound by the Agreement.  Sweeney provides no legal

10   authority supporting her position.  The Agreement sufficiently indicates TSC's intent to be bound.

11   The Agreement is provided to job applicants through an email from the address "Tractor Supply

12   Company Talent Acquisition."  Ex. B; *see* Williamson Decl. ¶ 6.  The Agreement is part of the

13   onboarding process for TSC's new employees.  *See* Ex. B; Williamson Decl. ¶ 6, *see generally*

14   Agreement.  And the Agreement itself explicitly states that it applies to both TSC and its

15   employees.  The first sentence of the Agreement states: "Tractor Supply Company . . . and the

16   employee . . . agree as follows."  Agreement at p. 1.  The first sentence of the first substantive

17   paragraph provides, "Employer and Employee mutually consent to the final resolution by binding

18   arbitration of any and all claims or disputes Employer may have against or with the Employee,

19   and/or Employee may have against or with Employer."  Agreement ¶ 1.  Courts that have

20   considered similar arbitration contracts have found that the lack of the employer's written

21   signature does not render the contract unenforceable.  *See, e.g.*, *Chico*, 2014 WL 5088240 at *7;

22   *Lara v. Onsite Health, Inc*., 896 F. Supp. 2d 831, 844 (N.D. Cal. 2012); *Cruise v. Kroger Co*., 233

23   Cal. App. 4th 390, 398-99 (2015).  The Court finds that the Agreement is not invalid on these

24   grounds.

25       **c.  Unconscionability**

26       Sweeney contends that the Agreement is not enforceable because it is unconscionable

27   under California law.  "[U]nconscionability has both a procedural and a substantive element, the

28

former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114 (2000) (quotations and alterations omitted). "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4599645, at *4 (N.D. Cal. Sept. 25, 2018) (quoting *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013)). "Substantive unconscionability addresses the fairness of the term in dispute." *Id.* (quoting *Pokorny, Inc*., 601 F.3d at 997). "The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party," so the mutuality of the contract is of "paramount consideration." *Id.* Both procedural and substantive unconscionability must be "present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz*, 24 Cal. 4th at 114. But they need not be present at equal levels. Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* The Court finds that the Agreement has a low degree of procedural unconscionability and that a single clause that is substantively unconscionable. This clause, though, is easily severed from the remainder of the Agreement. The Court, therefore, finds that the Agreement is not so unconscionable as to make it unenforceable.

### i. Procedural Unconscionability

Sweeney argues that the Agreement is procedurally unconscionable because it is an adhesion contract, presented to her as a condition of employment and on a take-it-or-leave it basis. The onboarding process did not give her the opportunity to comment on the Agreement or to negotiate any changes. Contracts of adhesion "contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1244 (2016). The California Supreme Court has instructed courts to be "particularly attuned to this danger in the employment

setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." *Id.* Nonetheless, adhesion contracts "are indispensable facts of modern life that are generally enforced." *Id.*

When TSC emailed Sweeney the link to access the onboarding process, including the Agreement, the body of the email stated: "The next step in the process is to complete your onboarding forms. This is a time sensitive process, and any delay in completion may result in a delayed start date." Williamson Decl. Ex. B. Sweeney contends that this statement supports her position. But, this statement did not impose any hard limits on how long Sweeney could review the Agreement prior to signing it. She was still able to pause the onboarding process and to review the Agreement for as long as she liked. The Court finds that this statement, at most, exhibits a slight indicium of procedural unconscionability.

To the extent Sweeney argues that the Agreement is procedurally unconscionable because it did not attach copies of the arbitration rules that it incorporates by reference, the Court is not persuaded. Opp'n at 9-10 n.1. While a failure to attach incorporated rules to an arbitration agreement may be a factor supporting a finding of unconscionability, it is insufficient to support a finding of unconscionability on its own. *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 690 (2014). Such an omission is unconscionable when "the failure would result in surprise to the party opposing arbitration." *Id.* at 690-91 (collecting cases and distinguishing *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003)). Sweeney does not contend that she was surprised by the selected arbitration rules. Moreover, as was the case in *Lane*, the arbitration rules incorporated here are easily found on the internet. *Id.* The NAM rules are linked in the text of the Agreement itself, and Sweeney's opposition brief provides links to both the NAM rules and the JAMS rules. Agreement ¶ 3; Opp'n at 10 nn.2-3.

In sum, the Court finds that Agreement contains a low degree of procedural unconscionability. *Cf. Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783-84 (9th Cir. 2002). But, where, "as here, there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low and the agreement will be

enforceable unless the degree of substantive unconscionability is high." *Sepra v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013) (citations omitted); *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017). The Court now turns to whether the Agreement is substantively unconscionable.

### ii. Substantive Unconscionability

Sweeney raises three arguments that the Agreement is substantively unconscionable: (1) that the Agreement is ambiguous as to the rules that govern discovery, (2) that it does not provide for adequate discovery, and (3) that it is not bilateral. The Court first considers her arguments regarding discovery. She contends that the Agreement contradicts itself because it provides in one paragraph that the "arbitration shall be administered by National Arbitration and Mediation (NAM) and shall be governed by NAM's Employment Rules and Procedures, unless those Rules conflict with the terms of this Agreement, in which case the terms of this Agreement shall control." Agreement ¶ 3. But, later it provides that "[a]ppropriate limitations on discovery and any rights to additional discovery shall be governed by the Rules of JAMS or the rules of the administering agency selected by the parties." *Id.* ¶ 8. Sweeney says that the JAMS discovery rules allow for each side to take a single deposition of the opposing party, but the NAM rules allow for three depositions. *Compare* JAMS Rule 17(b) *with* NAM Employment Rules & Procedures No. 11(B)(ii). She contends that this purported ambiguity is analogous to *Harper*, where the California Court of Appeal considered an arbitration agreement that selected a set of arbitration rules that were subject to change, and "it [was] unclear whether an arbitration would be conducted under the [selected] rules as of the time of contracting, or at the time of arbitration." 113 Cal. App. 4th at 1407. The *Harper* Court found that this ambiguity supported a finding of unconscionability because "[b]efore the main battle commenced in arbitration, there would be a preliminary fight over which set of arbitration rules governed—something which, at the very least, would add to the customer's legal expense." *Id.*

But *Harper* is off point. There, the California Court of Appeal found the arbitration contract to be *procedurally* unconscionable. *Id.* Moreover, Sweeney does not argue that the NAM

United States District Court
Northern District of California

and JAMS rules are inconstant as was the case in *Harper*. Rather, she says that the Agreement itself is ambiguous as to which rules control. But the Agreement is not ambiguous. Paragraph 3 provides that the arbitration shall be "administered by an administering agency agreed upon by the parties." Agreement ¶ 3. This provision aligns with Paragraph 8 which notes that the parties may "select[]" the agency to administer the arbitration and then apply the discovery rules of that agency. *Id.* ¶ 8. Only if the parties fail to agree on an administering agency will NAM administer the arbitration and apply the NAM Employment Rules and Procedures—"unless those Rules conflict with the terms of [the] Agreement, in which case the terms of [the] Agreement shall control." Agreement ¶ 3. By the terms of Paragraph 8, the Agreement selects the JAMS rules for discovery. Thus, Paragraph 3 and Paragraph 8 do not conflict, so there is no ambiguity. The Court finds that the Agreement is not substantively unconscionable for this reason.

Sweeney further argues that the JAMS Rule 17(b) is substantively unconscionable for failing to provide adequate discovery. The Rule provides: "Each Party may take one deposition of an opposing Party or of one individual under the control of the opposing Party. . . . The necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness." JAMS Rule 17(b). Sweeney argues that this unconscionably restricts her to a single deposition even though TSC, as her employer, will have more information regarding its policies and procedures than she. However, this Court, like other courts that have considered JAMS Rule 17(b) finds that it does not limit her to one deposition. Rather, it provides that each party may take at least one deposition while allowing the arbitrator to order additional depositions. *Sanchez v. Gruma Corp.*, 2019 WL 1545186, at *8 (N.D. Cal. Apr. 9, 2019); *Pope v. Sonatype, Inc.*, 2015 WL 2174033, at *5 (N.D. Cal. May 8, 2015). Accordingly, the Court finds that Rule 17(b) provides for sufficient discovery under California law and is not unconscionable. *Sanchez*, 2019 WL 1545186, at *8; *Pope*, 2015 WL 2174033, at *5.

Finally, the Court considers Sweeney's argument that the Agreement is substantively unconscionable because it is not bilateral. Under California law, an arbitration agreement must

Case No.: 5:18-cv-04848-EJD
ORDER GRANTING MOTION TO COMPEL ARBITRATION
9

exhibit a "modicum of bilaterality" so that it is not "unfairly one sided." *Armendariz*, 24 Cal. 4th at 116. Sweeney challenges the amendment provision, which states that the Agreement "may be modified or terminated by Employer upon thirty (30) days written notice to Employee. Any modifications or termination shall be prospective only and shall not apply to any claims that have accrued, are pending in arbitration, or of which the Employer has been given notice by Employee prior to the effective date of the modification or termination." Agreement ¶ 16. This provision of unilateral power to the employer is analogous to the modification provision at issue in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003). The Ninth Circuit found that provision to be substantively unconscionable, reasoning that "[a]lthough the agreement requires [the defendant] to provide exiguous notice to its employees of termination or any modification, such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement. . . . [The defendant] proscribes an employee's ability to consider and negotiate the terms of her contract." *Id.* at 1179. The same reasoning applies here where TSC is obligated to provide its employees with notice of a modification, but its employees are powerless to halt or influence such a modification. The Court finds the modification provision of the Agreement to be unconscionable. *See Prasad*, 2018 WL 4599645, at *7.

But, that does not mean that the entire Agreement is unenforceable. Rather, under California law, a court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." *Prasad*, 2018 WL 4599645, at *11 (quoting Cal. Civ. Code § 1670.5(a)). "A court may 'refuse to enforce the entire agreement' only when it is 'permeated' by unconscionability." *Poublon*, 846 F.3d at 1272 (quoting *Armendariz*, 24 Cal. 4th at 122). The Agreement is not permeated with unconscionability. This Court will sever this unconscionable provision concerning modification and enforce the remainder of the Agreement. *See Prasad*, 2018 WL 4599645, at *12.

### III. Motion to Dismiss

The Court first considers whether Sweeney's class claims should be dismissed. TSC

moves the Court to dismiss Sweeney's class claims because the Agreement provides that "neither [party] will pursue representative, class or collective claims on behalf of other persons or entities, including but not limited to current or former employees." Agreement ¶ 5. Such class action waivers are enforceable under the FAA. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631, (2018); *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 366 (2014). Sweeney does not contest this argument. The Court finds the class action waiver to be valid, and compels Sweeney to arbitrate her claims on an individual basis.

The Court now turns to whether to dismiss all of her claims under Rule 12(b)(1) because her claims are subject to the arbitration under the Agreement. The FAA provides that, when a party's claims are subject to an arbitration agreement, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3 (emphasis added). In the Ninth Circuit, "notwithstanding the language of § 3, a district court may . . . dismiss [an action] outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072, 1074 (9th Cir. 2014). TSC requests that the Court—at minimum—stay this action, and also moves the Court to dismiss Sweeney's individual claims under Rule 12(b)(1). While TSC persuasively argues that the Court could dismiss the individual claims, TSC does not show why the Court should. The Court sees no reason to depart from the plain language of the FAA. *Magana v. DoorDash, Inc*., 343 F. Supp. 3d 891, 902 (N.D. Cal. 2018). The Court denies TSC's motion to dismiss all of Sweeney's claims and stays the action pending arbitration instead.

## IV.    CONCLUSION

The Court orders as follows:

- TSC's motion to dismiss Sweeney's class claims is granted.

- TSC's motion to compel arbitration is granted. Sweeney shall arbitrate her claims on an individual basis.

- The modification provision of the Agreement is severed from the Agreement because it is unconscionable.

United States District Court
Northern District of California

1        • TSC's motion to dismiss Sweeney's remaining claims is denied.

2        • The action is stayed pending resolution of the arbitration. The Parties shall file

3           with this Court a Joint Status Report within seven days of the resolution of

4           arbitration or every 120 days, whichever is sooner.

5        The clerk shall administratively close this file. This is an internal administrative procedure

6 that does not affect the rights of the parties.

7        **IT IS SO ORDERED.**

8 Dated: June 5, 2019

9

10                        EDWARD J. DAVILA
                         United States District Judge